In the Matter of BARBARA BLUM, as Commissioner of the New York State Department of Social Services, Appellant, v JACOB ROSENBAUM et al., Respondents.

Second Department, June 7, 1982

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Frederic L. Lieberman, George D. Zuckerman* and *Paul M. Glickman* of counsel), for appellant.

*Herschel Greenbaum* for Hi-Tor Manor Home for Adults, respondent.

**OPINION OF THE COURT**

GIBBONS, J. P.

In November, 1979, Congress enacted Public Law 96-126 which, *inter alia,* authorized the payment of a special one-time energy allowance to Supplemental Security Income (SSI) recipients in order to help defray the increasingly high cost of home heating fuel. Pursuant to this program, New York State residents who were SSI recipients in December, 1979, received $150 each in January, 1980, as a special energy allowance (SEA).

In December, 1979, Karin Eriksen Perez, Deputy Commissioner of the Division of Adult Residential Care, State Department of Social Services, sent letters to the operators and residents of adult residential care facilities in which she described the SEA program. Ms. Perez also recommended that the resident retain approximately $50 of the allowance in order to purchase clothing for the winter and share about $100 with the operator of the facility to help cover the increased cost of heating oil at the facility.

Upon receipt of these funds, the residents of the Mountainview Home for Adults allocated the SEA funds in accordance with the recommendation of Ms. Perez. Of the $15,200 received by the residents, $4,800 was retained for their own energy-related uses and $10,400 was given to the operator of the home for the purpose of purchasing fuel.

Up until December 31, 1979, Mountainview Home was operated by Jacob and Meyer Rosenbaum. However, on January 1, 1980, Hi-Tor Manor Home for Adults, Mountainview's sublessor, took back possession of the facility pursuant to an order of eviction. At this time, Alex Edelman, a partner in Hi-Tor, took control of Mountainview. As a result he received the $10,400 SEA allotment from the residents.

On January 15, 1980, pursuant to an order of Justice CERRATO, State Commissioner of Social Services Barbara Blum and Al Heim were appointed temporary receivers of Mountainview. On January 16, 1980, Heim took control of the operation of Mountainview. On January 25, 1980, an order was entered appointing Blum and Heim permanent receivers.

On March 26, 1980, Blum, Hi-Tor and North R.H. Company (the primary lessor) entered into a stipulation whereby a number of the monetary claims between these parties were settled. However, they were unable to agree to a disposition of Blum's claim of $31,004.42 against Hi-Tor. Pursuant to Paragraph FOURTH of the stipulation, Hi-Tor gave notice to the court of the necessity for a hearing.

Following the submission of evidence and the holding of a hearing, Special Term held that since the residents of Mountainview had voluntarily turned over their SEA

funds to Hi-Tor for the purpose of helping pay for the increased cost of the home's heating oil, Hi-Tor was entitled to keep the funds.

We disagree.

Special Term's decision completely disregards the purpose that Congress had when it enacted Public Law 96-126, which provided for the distribution of SEA funds to SSI recipients. The law provides $1.2 billion for the payment of energy grants and allowances. The sum of $400 million was set aside as a special one-time emergency energy allowance for SSI recipients. A formula for distributing the funds was created which included such factors as the number of heating days, the differences in heating energy expenditures between 1978 and 1979, and the number of SSI recipients, including those residing in adult homes. Significantly, the appropriation bill contained the following language: "That the States shall, in awarding funds, give priority to those households experiencing significant increases in heating fuel costs over the levels of the previous year". (93 US Stat 978.)

On December 4, 1979, the New York State Department of Social Services received a Social Security claims transmittal from the Federal Government which provided specific information regarding this one-time emergency energy payment. The transmittal stated that "[t]he purpose of these SEA payments is to help alleviate the burden of escalating fuel costs for low income households." In addition, each SEA check was to include an explanatory insert which included the following: "This is a special check to help you pay bills for electricity, gas or oil this winter."

In view of the foregoing, it is apparent that SEA funds were only intended to help pay for the rising cost of heating and could not be used for any other purpose.

Special Term apparently overlooked the fact that Hi-Tor never used any part of the funds to purchase heating oil. Rather, Hi-Tor only operated Mountainview for the period of approximately two weeks during the first half of January, 1980. As revealed by the accounting in evidence, the only fuel delivery made during that time (costing $2,812.51) was paid for by the Department of Social Services. When the residents of Mountainview handed over a

portion of the SEA funds received by them, they did it with the express purpose of helping the home's operator to meet the increased cost of heating oil. The funds, voluntarily transferred, were never used for their intended purpose.

We agree with the petitioner that to allow Hi-Tor to retain these funds would confer on it an unwarranted financial windfall, frustrate the purpose of Congress in enacting the SEA program and force the taxpayers of this State, through the Department of Social Services, to bear the burden of paying for the fuel.

WEINSTEIN, O'CONNOR and BOYERS, JJ., concur.

Order of the Supreme Court, Rockland County, dated December 11, 1980, reversed, on the law and the facts, with costs payable by respondent Hi-Tor Manor Home for Adults, and it is determined that petitioner is entitled to the funds in question.